O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MARIA ESTHER P., | Case No. 5:23-cv-00178-KES |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On February 3, 2023, Plaintiff Maria Esther P. ("Plaintiff") filed a Complaint for review of denial of social security disability benefits. (Dkt. 1.) Plaintiff filed Plaintiff's Brief ("PB") under the Rule 6 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). (Dkt. 13.) Defendant filed a responding Commissioner's Brief ("CB") under the Rule 7. (Dkt. 20.) On September 7, 2023, Plaintiff replied ("PRB"). (Dkt. 21.)

For the reasons stated below, the Commissioner's decision denying benefits is AFFIRMED.

## II.

## BACKGROUND

On January 9, 2020, Plaintiff applied for supplemental security income ("SSI") under Title XVI of the Social Security Act. Administrative Record ("AR") 695-701. Plaintiff alleged disability beginning on June 9, 2017. AR 695. She had stopped working in 2008 after an industrial forklift accident. AR 496.

On December 16, 2021, an Administrative Law Judge ("ALJ") conducted an online video hearing at which Plaintiff, who was represented by counsel, appeared and testified with the assistance of a Spanish interpreter.[1] AR 485-513. A vocational expert ("VE") also testified. AR 504.

On March 2, 2022, the ALJ issued an unfavorable decision. AR 84-98. The ALJ noted that Plaintiff had been found "not disabled" in an earlier ALJ decision dated November 27, 2019. AR 84. The ALJ found that Plaintiff had provided "new and material evidence relating to the findings … for determining disability with respect to the unadjudicated period." AR 85. Accordingly, the ALJ did not apply res judicata to the prior decision's findings. AR 85.

The ALJ used the mandatory five-step evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since applying for SSI on January 9, 2020. AR 87. At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs"):

> [S]tatus post left and right carpal tunnel releases; degenerative disc disease of the lumbar and cervical spine; hypothyroidism; rheumatoid arthritis; fibromyalgia; migraine headaches; bilateral hip osteoarthritis; and bilateral shoulder impingement, degenerative changes at the bilateral shoulders and low-grade tear at the right

---

[1] Plaintiff testified that she could read and write English and had taken online classes in English to obtain her GED. AR 495.

supraspinatus tendon.
AR 87.  The ALJ found that Plaintiff's mental MDIs of "depressive and anxiety disorder" were "nonsevere."  AR 87-90.

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b), with the following restrictions:

> [L]ift and/or carry ten pounds frequently, twenty pounds occasionally; stand and/or walk for six hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; and frequent reaching, handling, and fingering with the bilateral upper extremities.

AR 90-91.

Based on these RFC findings, the VE's testimony, and other evidence, the ALJ found that Plaintiff could no longer perform her past relevant work as an industrial truck operator and warehouse worker.  AR 96.  Plaintiff could, however, work as a small product assembler, parking lot attendant, and counter attendant.  AR 97.  The ALJ concluded that Plaintiff was not disabled since January 9, 2020.  AR 98.

## III.
## ISSUES PRESENTED

<u>Issue One</u>: Whether substantial evidence supports the ALJ's RFC findings.  (PB at 5.)

<u>Issue Two</u>: Whether the ALJ gave clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.  (<u>Id.</u> at 9.)

## IV.
## SUMMARY OF THE MEDICAL OPINION EVIDENCE

The AR contains two medical opinions about the limitations caused by

1  Plaintiff's physical MDIs.  First, on July 6, 2020, Dr. L. Tanaka, M.D., opined that
2  Plaintiff could "occasionally" lift and/or carry twenty pounds, "frequently" lift
3  and/or carry ten pounds, and stand, walk, and/or sit for six hours of a normal eight
4  hour workday, with normal breaks.  Dr. Tanaka also found that Plaintiff had
5  neither pushing, pulling, nor manipulative limitations.  Dr. Tanka found that
6  Plaintiff could never climb ladders, ropes, and scaffolds, could climb ramps and
7  stairs occasionally, and had no other postural limitations.  AR 558-59.

8  On January 29, 2021, Dr. M. Amado, M.D., also opined that Plaintiff could
9  "occasionally" lift and/or carry twenty pounds, could "frequently" lift and/or carry
10 ten pounds, could stand, walk, and/or sit for six hours of a normal eight hour
11 workday, with normal breaks, and had neither pushing nor pulling limitations.
12 But, unlike Dr. Tanaka, Dr. Amado found that Plaintiff had "limited" gross
13 manipulation, fine manipulation, and overhead reaching abilities.  Dr. Amado
14 opined that Plaintiff could climb ladders, ropes, and scaffolds occasionally (as
15 opposed to "never," like Dr. Tanaka) and could climb ramps and stairs frequently
16 (as opposed to "occasionally," like Dr. Tanaka).  AR 580-82.

## V.
## DISCUSSION

**A.    ISSUE ONE: The ALJ's RFC Findings.**

 **1.    Relevant Law.**

21 It is the ALJ's role to translate the evidence into an RFC.  See Rounds v.
22 Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is
23 responsible for translating and incorporating clinical findings into a succinct
24 RFC.").  The ALJ's findings and decision should be upheld if they are free from
25 legal error and are supported by substantial evidence based on the record as a
26 whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra
27 v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such
28 relevant evidence as a reasonable person might accept as adequate to support a

1    conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028,
2    1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance.
3    Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of Soc. Sec. Admin.,
4    466 F.3d 880, 882 (9th Cir. 2006)). Opinions of State agency medical consultants
5    can provide substantial evidentiary support for RFC findings. Saelee v. Chater, 94
6    F.3d 520, 522 (9th Cir. 1996); 20 C.F.R. § 416.927 (f)(2)(i).

7        To determine whether substantial evidence supports a finding, the reviewing
8    court "must review the administrative record as a whole, weighing both the
9    evidence that supports and the evidence that detracts from the Commissioner's
10   conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the
11   evidence can reasonably support either affirming or reversing," the reviewing court
12   "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

13       **2.   Relevant Administrative Proceedings.**

14       The ALJ found Dr. Tanaka's opinions "partially persuasive." AR 95. The
15   ALJ found the opinions about Plaintiff's ability to lift, stand, walk, climb, and
16   engage in postural activities supported by the medical evidence. The ALJ,
17   however, found that the medical evidence supported restrictions on reaching,
18   handling, and fingering, such as those assessed by Dr. Amado. AR 95.

19       The ALJ also found Dr. Amado's opinions "partially persuasive." AR 95.
20   The ALJ found most of his opinions well-supported but found "based on cervical
21   spine and lumbar spine findings and fibromyalgia, more restrictive climbing
22   limitations are warranted." AR 95.

23       As summarized in the chart below, the ALJ's RFC findings (highlighted in
24   yellow) are all supported by opinions from either Dr. Tanaka or Dr. Amado.
25   Consistent with the ALJ's explanation of her RFC findings cited above, the ALJ
26   adopted all of Dr. Amado's findings except for the findings about climbing. The
27   ALJ adopted Dr. Tanaka's more restrictive climbing limitations.

| Activity/Person | Dr. Tanaka | Dr. Amado | ALJ |
|---|---|---|---|
| Lift or carry twenty pounds | Occasionally | Occasionally | Occasionally |
| Lift or carry ten pounds | Frequently | Frequently | Frequently |
| Stand, sit, or walk | Six hours with normal breaks | Six hours with normal breaks | Six hours with normal breaks |
| Push and pull | No limitations | No limitations | No limitations |
| Climb stairs or ramps | Occasionally | Frequently | Occasionally |
| Climb ladders, ropes, or scaffolds | Never | Occasionally | Never |
| Postural limitations | None | None | None |
| Manipulation and reaching limitations | No limitations | Limited to frequent | Limited to frequent |

### 3. Analysis of Claimed Error.

First, Plaintiff contends that the ALJ's RFC analysis "rests on the ALJ's lay medical opinion." (PB at 8.) Plaintiff contends, "The ALJ improperly interpreted raw medical data to formulate her RFC." (PRB at 3.) But as shown in the chart above, each of the ALJ's RFC findings comes directly from one of the State agency physicians.

Next, Plaintiff contends that because the ALJ found the State agency physicians' opinions "only partially persuasive," they cannot be substantial evidence. (PB at 5.) Plaintiff says, "The ALJ essentially concluded that the state agency opinions are stale and do not reflect a complete picture of [Plaintiff's] medical condition." (PB at 7.) Not so. The ALJ found certain parts of their opinions supported by the medical evidence and thus persuasive. AR 95. The ALJ adopted those persuasive parts in her RFC findings. AR 90-91.

Finally, Plaintiff contends that the ALJ should have obtained a consultative examination or a medical expert's testimony, because those doctors could have considered the medical evidence that post-dates Dr. Amado's January 2021 opinions. (PB at 8; PRB at 4.) But the ALJ considered this later evidence. AR 92 ("Although additional findings were noted in 2021, they are consistent with restrictions in the above residual functional capacity.") ALJs routinely rely on the opinions of State agency medical consultants, even though such opinions are written long before the ALJ closes the administrative record. "[T]he fact that a

non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence." Maliha K. v. Saul, No. 8:19-CV-00877-MAA, 2020 U.S. Dist. LEXIS 78034, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020). This is because "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." Owen v. Saul, 808 F. App'x 421, 423 (9th Cir. 2020) (unpublished).

This always-present gap does not trigger the ALJ's duty to order a consultative examination. Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (The Commissioner "has broad latitude in ordering a consultative examination" and "[t]he government is not required to bear the expense of an examination for every claimant."); Taylor v. Astrue, 386 F. App'x 629, 632-33 (9th Cir. 2010) (holding that an ALJ need not order a consultative examination where the evidence is sufficient to support a decision, citing 20 C.F.R. § 416.919a(b)). Plaintiff has not shown that that the ALJ erred by relying on the State agency consultants without obtaining a consultative examination.

**B.      ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

   **1.      Relevant Law.**

ALJs engage in a two-step analysis to evaluate a claimant's subjective symptom testimony. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only by making specific findings that

support the conclusion.  Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).  Unless an ALJ finds that a claimant is malingering, an ALJ must provide clear and convincing reasons for rejecting a claimant's subjective testimony about the severity of experienced symptoms.  Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  While one reason for discrediting symptom testimony can be the lack of supporting or consistent objective medical evidence, that cannot be the sole reason.  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

### 2. Relevant Administrative Proceedings.

The ALJ summarized Plaintiff's hearing testimony, as follows:

> She described symptoms of back, shoulder, bilateral hand, and hip pain, migraines, and waking sleep.  Reported treatment included physical therapy, which helped while she was in physical therapy but the pain returned, pain medications, and injections for pain.  She stated she also used a donut-shaped cushion when sitting to prevent pain but did not use a cane or walker when ambulating.  She stated she had wrists braces but did not always wear them.  The claimant testified she was limited in her ability to sit longer than 30 to 40 minutes, stand for more than 15 minutes at a time, walk for more than three to five minutes at a time, and lift more than 10 pounds.

AR 91.  The ALJ also considered Plaintiff's Function Report and the Function Report completed by Plaintiff's daughter.  AR 91, citing AR 769-93.

The ALJ found that while Plaintiff's MDIs "could reasonably be expected to cause at least some of the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 91-92.  The ALJ gave at least three reasons.  First, the ALJ found that Plaintiff's claimed "symptoms and limitations

8

are disproportionate to the objective evidence." AR 92. Second, the ALJ found Plaintiff's testimony inconsistent with her "relatively normal levels of activity." AR 92. Third, the ALJ found that Plaintiff had made inconsistent statements "about the intensity, persistence, and limiting effects" of her symptoms. AR 92.

### 3. Analysis of Claimed Error.

#### a. <u>Reason One</u>: Lack of Objective Support.

The ALJ found, "Evidence pertaining to [Plaintiff's] degenerative disc disease of the lumbar and cervical spine does not support [her] allegations or a finding of disability." AR 92. The ALJ cited medical examinations and tests that had some positive findings but that also included negative straight-leg raising tests, normal ambulation, and normal or only mildly reduced range of motion. AR 92. The ALJ summarized imaging of Plaintiff's back as showing mostly mild results. AR 93. The ALJ noted that after an April 2021 MRI of the lumbar spine, Plaintiff's "neurologist noted no urgent or emergent surgical intervention was indicated." AR 93. The ALJ found that this medical evidence supported significant work restrictions (i.e., a limitation to light work) but did not support Plaintiff's claims of disabling limitations.

The ALJ also summarized objective findings relating to Plaintiffs shoulders, wrists, and hands. The ALJ concluded that these merited some manipulative restrictions (as opined by Dr. Amado) but did not limit Plaintiff's functioning to the extent she claimed. The ALJ made similar findings concerning Plaintiff's arthritis and fibromyalgia causing tenderness at fewer than half the tested points and Plaintiff's migraine headaches being "not intractable as they were helped with Topamax." AR 94.

Plaintiff contends that the "ALJ summarized the medical evidence but failed to adequately tie that evidence to [Plaintiff's] testimony she found not credible." (PB at 10-11.) But the ALJ noted Plaintiff's testimony that she could not stand more than 15 minutes or walk more than three to five minutes, had limited use of

her hands, and was unable to work as a result of pain. AR 91, summarizing AR 497, 501, 791. The ALJ's description of the medical findings, contrasted with this testimony, adequately shows and supports the ALJ's reasoning.

Next, Plaintiff argues that the ALJ could not rely only on the lack of objective support, and the ALJ's other reasons lack substantial evidentiary support. (PB at 11.) But as discussed below, the ALJ adequate supported an additional reason for discounting Plaintiff's pain testimony.

        b.    <u>Reason Two</u>: Inconsistency with Daily Activities.

An ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1040 (9th Cir. 2007). "Even if the claimant experiences some difficulty or pain, her daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." <u>Smartt v. Kijakazi</u>, 53 F.4th 489, 499 (9th Cir. 2022) (citation omitted). In <u>Smartt</u>, for example, the claimant reported cooking, cleaning, caring for her daughter, doing laundry, grocery shopping with the assistance of her mother, and completing "various chores, albeit in short increments due to pain." <u>Id.</u> at 499-500. The Ninth Circuit affirmed the ALJ's finding of inconsistency because "the ALJ's determination that Smartt's self-reported activities were inconsistent with the constant '10/10' pain she described was not unreasonable." <u>Id.</u> at 500.

Plaintiff here also gave some extreme testimony. As the ALJ noted, Plaintiff testified that she could not "stand for more than 15 minutes" or "walk for more than three to five minutes."[2] AR 91, citing AR 501. The ALJ contrasted this testimony with Plaintiff's reported activities, as follows:

---

[2] Plaintiff testified that her condition had worsened since her October 2019 hearing. AR 504. Then, she testified that she could stand approximately one half hour and became short of breath if she walked "over a mile" at a slow pace. AR 467.

1       However, reported activities of daily living included taking care of
2       her small dog, eating, watching television, walking around the house,
3       sitting, performing housework when she felt she could, shopping with
4       her daughter, cooking for herself, and caring for her personal needs.

AR 91; see AR 499-500. The ALJ also wrote, "Additionally, despite her alleged limitations and pain, her activities of daily living reflect relatively normal levels of activity, which included caring for a pet, cooking for herself, doing light laundry and cleaning, driving, and shopping, albeit with some assistance." AR 92.

      Similarly, the ALJ cited from Plaintiff's Function report that she claimed to be "limited in her ability to squat, bend, reach, kneel, climb stairs, and use her hands." AR 91; see AR 791 (Plaintiff indicated that her pain affected all postural activities and using her hands; she "only can lift 5 pounds, no lifting, squatting."). The ALJ contrasted this with Plaintiff's ability "to drive a car and do light loads of laundry and cleaning." AR 91; see AR 788-89.

      Indeed, the ALJ asked Plaintiff about one apparent contradiction at the hearing. Plaintiff first testified that she went shopping with her daughter and did not use a cane or motorized cart to do so. AR 500; AR 789 (reporting shopping every one or two weeks). When Plaintiff later testified that she could only stand for 15 minutes and walk for three to five minutes (AR 501), the ALJ asked, "What about when you're in [a] store?" AR 502. Plaintiff answered:

      Yes, well, we're – I'm either I'm standing on my feet, or sometimes I
      can sit down, and I'll and mostly since they have the little restaurants,
      so we go and sit there and rest until I feel better.

AR 502. The ALJ could reasonably find that this explanation did not clear up the apparent inconsistency.

      Plaintiff contends that ALJs can only rely on inconsistencies between a claimant's testimony and their daily activities if the ALJ can show that the activities are commensurate "with the rigors of full-time employment." (PB at 11.)

11

But that is contrary to the holding in Smartt.

Plaintiff also contends that her "minimal daily activities do not undermine her subjective complaints." (PRB at 5.) But the ALJ reasonably found inconsistency between being able to go grocery shopping without an assistive device and Plaintiff's claimed inability to walk for more than three to five minutes. Similarly, the ability to do laundry indicates some lifting ability greater than Plaintiff claimed, and the ability to get in and out of a car and drive indicates some ability to bend, twist, and use one's hands to grip the steering wheel. Again, the ALJ adequately identified inconsistencies, and substantial evidence supports her findings.

      a.     <u>Reason Three</u>: Inconsistent Statements.

The ALJ identified the following inconsistencies concerning Plaintiff's use (or non-use) of assistive devices:

> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent. Despite complaints of pain throughout her body, [Plaintiff] indicated she did not use a cane or walker and did not always use her wrists braces. This suggests she was able to ambulate and balance sufficiently enough to not need an assistive device and was able to manage without use of her wrist braces.

AR 92.

Regarding her wrist braces, Plaintiff testified that she used them "but not all the time" because her doctor told her not to use them "all the time." AR 499. This testimony provides a reason for Plaintiff's "manag[ing] without use of her wrist braces" that is unrelated to the intensity of her hand and wrist pain.

Regarding use of a cane or assistive device for walking, Plaintiff consistently testified that she did not use one. AR 499; AR 500 ("I prefer to try and be mobile on my own."). There is some logical inconsistency here, because

one might expect that if a person could only walk for a few minutes, they would use an assistive device to improve their functioning and avoid falls.  Ultimately, however, since Plaintiff truthfully testified that she did not use an assistive device, this reason seems more like another example of how Plaintiff's testimony lacks objective support from her medical records.³  But even if Reason Three is not clear and convincing, Reasons One and Two sufficiently support the ALJ's partial discrediting of Plaintiff's symptom testimony.

## VI.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED:  September 25, 2023

_____
KAREN E. SCOTT
United States Magistrate Judge

---

³ While Plaintiff testified that she could only walk three to five minutes, Plaintiff's medical records do not reveal any significant difficulty walking.  See AR 914 (12/20/17: normal gait); AR 918 (3/8/18: same); AR 921 (10/20/18: same); AR 1072 (10/2/18: "No abnormal gait … no imbalance, no falls"); AR 1394 (2/12/20: "normal ambulation"); AR 1550 (10/28/20: "able to walk 1-2 blocks"); AR 57 (4/26/22: "negative" for musculoskeletal symptoms and extremities "nontender"); AR 22 (9/13/22: "moving all ext. coordination intact").  Despite the voluminous AR, Plaintiff has not cited any records showing that a medical provider ever noticed that she had difficulty walking.